IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA A. MOORE<br>178 Azalea Circle<br>Limerick, PA 19468-1331 | :<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>:<br>: | |
| v. | :<br>: | |
| BRISTOL HOSPICE – BLUE BELL, LLC<br>3031C Walton Road, Suite 202<br>Plymouth Meeting, PA 19462 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| and | :<br>: | |
| BRISTOL HOSPICE, LLC<br>206 N. 2100 West, Suite 202,<br>Salt Lake City, UT 84116 | :<br>:<br>:<br>: | |
| Defendants. | :<br>: | |

## CIVIL ACTION COMPLAINT

Plaintiff, Melissa Moore, by and through her undersigned counsel, hereby avers as follows:

### I.     INTRODUCTION

1.     This action has been initiated by Plaintiff against Bristol Hospice – Blue Bell, LLC and Bristol Hospice, LLC (*hereinafter* collectively referred to as "Defendants") for violations of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff was subjected to discrimination and

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA.  Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

unlawfully terminated by Defendants from her employment, and she suffered damages more fully described/sought herein.

## JURISDICTION AND VENUE

2.    This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3.    This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they subject to personal jurisdiction, rendering Defendants residents of this District.

6.    Plaintiff properly exhausted her administrative remedies to proceed under federal laws asserted *infra* by filing with the Equal Employment Opportunity Commission ("EEOC") timely and by filing the instant lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of case closure.

## PARTIES

7.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

2

8.    Plaintiff is an adult individual, with an address as set forth in the caption.

9.    Bristol Hospice, LLC is an entity headquartered at the above address which provides hospice, homecare, palliative care, and end-of-life support (among other related services) at locations throughout the United States, including at the location in Plymouth Meeting, Pennsylvania where Plaintiff worked.

10.    Defendant Bristol Hospice – Blue Bell, LLC provides hospice, homecare, palliative care, and end-of-life support (among other related services) out of Plymouth Meeting, Pennsylvania, and is operated in all respects by Bristol Hospice, LLC, including as to benefits and payroll for its employees.

11.    Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single, integrated and/or joint employer for purposes of the instant action.

12.    At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

13.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.    Plaintiff was hired by Defendants effectively on or about March 25, 2024; and in total, Plaintiff was employed by Defendants for approximately 1.5 years until her termination on or about September 2, 2025.

15.     Plaintiff's job was primarily that of Chaplain and Spiritual Coordinator.

16.     Relevant management over Plaintiff included: (1) Erika Avila ("Avila" – Plaintiff's direct manager and Respondent's Director of Patient Care Services); and (2) Jennifer Pizzi ("Pizzi" - Executive Director of Defendants). From a human resources perspective, Plaintiff interacted with Carrie Espinel ("Espinel" – Regional Human Resources Director).

17.     Unfortunately, Plaintiff suffers from complications arising out of bilateral brachial plexopathy, back, shoulder and neck problems, and other physical health problems (generally related to Plaintiff's extremities).

18.     Such health problems are long-term or permanent; and beginning in or about April of 2025 Plaintiff was requesting medical accommodations from Defendants' management due to limitations associated with those disabilities.

19.     Examples[2] of accommodations Plaintiff was seeking included an ergonomic workstation, various computer-usage related equipment (such as headset, contour roller mouse, and a specific type of keyboard), and flexibility if Plaintiff had a medical flareup or medical appointment (as well as break entitlements).

20.     Through her employment, Plaintiff was an extremely hard worker, performed very well, and was passionate about her role.

21.     As a result, Plaintiff was shocked and taken aback when she was making health disclosures and requesting what she believed to be easy-to-accommodate accommodations, but experiencing delays, rejection(s), animosity, and non-responsiveness in return.

22.     Between April 2025 through August 2025, Plaintiff was continually required to present various medical information and medical notes from her physicians.

---

[2] This is not an exhaustive list in detail – but rather – a summary with some primary examples.

23.    Plaintiff also had to keep initiating follow-up due to Defendants' poor handling of medical accommodation matters and engaging in an ineffective interactive process.

24.    Plaintiff was waiting months just to hear back on some of her accommodation requests, and some were ultimately denied, such as a requested driving limitation while performing her job.

25.    Between June – August of 2025, Defendants were attempting to create a paper trail to pretextually terminate Plaintiff and feign that she had performance concerns.

26.    Plaintiff attributes the hostility towards her and malicious fabrication of performance concerns to be for multiple reasons: (1) Plaintiff had disclosed her health problems: (2) Defendants' management was very frustrated with her ongoing accommodation requests and continued follow up; and (3) Plaintiff had expressed on several occasions that she felt mistreated because of her health or ongoing medical accommodation requests and that Defendants had a poor system of handling employee accommodation needs.

27.    Some examples of the tremendous animosity and discriminatory and/or retaliatory admonishment(s) Plaintiff was enduring included but was not limited to:

a) On or about July 1, 2025, Plaintiff was presented with a "Final Written Warning." Plaintiff had expressed concerns that Dr. Gregory Skochko ("Skochko") committed a serious error of letting licensure (related to Medicare) lapse in the facility from on or about February of 2025 through June of 2025 and discussed some of the impacts. Plaintiff was issued a "Final Warning" for discussing this matter, under the premise that she was being "unprofessional." However, Plaintiff did nothing wrong, provided her own statement, and upon information and belief, Dr. Skochko *was not* issued a "Final Written Warning" despite creating chaos, causing significant patient complications, and violating federal regulations.

b) A meeting took place on or about July 11, 2025, wherein Plaintiff registered concerns that a supposed review discussion form was created without dialogue with Plaintiff. Plaintiff was only told that management can create memos without discussing them with Plaintiff but that nothing created without Plaintiff's knowledge is intended to be disciplinary.

c) In the summer of 2025, Defendants downgraded Plaintiff's security credentials and access, limiting her ability to perform certain duties, of which she expressed concerns verbally and in writing.

d) Plaintiff was being directed to handle certain matters in-person or to handle additional visits that she had previously handled virtually or via phone that served as a form of harassment or to make her role harder.

e) Plaintiff's management had become abrasive, demeaning, and visibly annoyed by Plaintiff's discussion, interaction, and communication with them.

28.    Prior to April of 2025, Plaintiff was never disciplined for any performance-related reason or anything related to her documentation. Plaintiff had participated in a single verbal discussion in September of 2024 as a reminder to make sure she was following the dress code, at which time Plaintiff shared she was merely cold in the office and wore a sweatshirt. However, post-April 2025 through her termination, Plaintiff was being overly scrutinized about anything and everything and Defendants were looking for any feigned rationale to discipline and ultimately terminate her.

29.    Prior to April of 2025, Plaintiff was also given a performance evaluation signed by her supervisor, Avila, on or about March 18, 2025.

30.    Plaintiff was identified therein as meeting or exceeding expectations in every rated category.

31.    This March 2025 evaluation further acknowledged that – not only had Plaintiff performed exceptionally well, but Avila recognized her for handling extra responsibilities of Volunteer Coordinator.

32.    Finally, Avila praised Plaintiff's handling of "documentation" and being a significant asset to the team.

33.    On or about September 2, 2025, Plaintiff was then terminated and informed during a quarterly review it appeared as if she engaged in mileage reimbursement fraud.

34.    This rationale for Plaintiff's termination was gross, so false, offensive, and blatantly pretextual for many reasons including *inter alia*:

a)  Plaintiff did nothing wrong and was deprived of any meaningful opportunity to understand the allegations against her or to respond effectively.

b)  Plaintiff handled mileage and reimbursement or costs in the same manner during her entire period of employment. It only became an apparent problem or concern **after** Defendants discriminated and retaliated against Plaintiff as of April 2025 and thereafter.

c)  The quarter in September of 2025 did not even end (as it would have ended on 9/30/25, not 9/2/25 or earlier). There was no random **or** standard audit process. Defendants were on a witch-hunt to claim anything to justify Plaintiff's termination.[3]

d)  Defendants were already trying to build a record of problems with Plaintiff but couldn't find a different performance reason to get rid of her. Moreover, Plaintiff was experiencing significant antagonism leading to her termination from employment.

e)  Defendants' claim that it developed a supposed sudden concern with her reimbursement for mileage is absurd, as such reimbursements had to be continually reviewed and approved by management during Plaintiff's tenure (not previously an issue at any prior stage of her employment pre-April 2025).

f)  Defendants' false assertion that a purported standard audit revealed concerns with her mileage reimbursement is also belied by their demonstrated intent to replace Plaintiff 1-2 months earlier. By early August of 2025, nearly a month prior to Plaintiff's termination, Anthony Jackson ("Jackson") had been hired. Jackson then functionally replaced Plaintiff after Defendants happened to develop a feigned concern with her mileage reimbursement. Upon information and belief – unlike Plaintiff – Jackson actually has a history of fraud and was terminated from his prior employment for fraud. Plaintiff was also far more qualified than her surreptitious replacement.

g)  If Defendants ever warned or gave Plaintiff a new directive on handling anything related to any travel or expenses, Plaintiff would have gladly changed a practice, adopted a new policy, or handled documentation as newly desired by Defendants. Yet Defendants elected to terminate Plaintiff under this guise after already recruiting her replacement prior to their claimed finding(s) in an alleged standard audit.

---

[3] *See e.g. Hobgood v. Illinois Gaming Bd*., 731 F.3d 635, 644 (7th Cir. 2013)(reversing grant of summary judgment and explaining that circumstantial evidence including evidence of a "witch-hunt" creates an inference of retaliation sufficient to avoid summary judgment); *Gray v. City of Dothan*, 2015 WL 3849576, at *13 (M.D. Ala. 2015)(evidence of employer going on witch-hunt to find basis to terminate employee warranted denial of summary judgment); *Welch v. Eli Lilly & Co.*, 2013 WL 4413323, at *20 (S.D. Ind. 2013)(evidence of employer looking for reason to terminate the plaintiff supported retaliation claim sufficient to avoid summary judgment).

35. Plaintiff was terminated by Defendants because of her actual or perceived health, because she requested medical accommodations, and because she complained on numerous occasions about mistreatment associated with her health disclosures, accommodation needs, and poor handling of the accommodation process in violation of the ADA and PHRA.

36. In addition to the aforementioned discrimination and retaliation associated with Plaintiff's disabilities, Defendants also had an unlawful policy and practice of not properly paying overtime compensation, requiring use of "comp time" or "flex time" to avoid payment at a rate of time and one half, which is illegal for a private employer, in violation of the FLSA (and Pennsylvania law).

37. In the days leading up to Plaintiff's termination from employment, she raised concerns to Defendants' management that she was not properly being paid overtime compensation she had earned.

38. Plaintiff was then terminated for completely pretextual reasons in unusually suggestive close proximity in timing to her complaints of unpaid overtime.

39. Therefore, Plaintiff also asserts that she was terminated in retaliation for engaging in protected activity under the Fair Labor Standards Act.

### COUNT I
### Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected her ability to perform life activities (such as working at times).

42. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable accommodations.

43. Plaintiff was subjected to harassment and animosity, and was abruptly terminated from her employment with Defendants in close proximity to her requests for/utilization of reasonable accommodations, for completely pretextual reasons.

44. Prior to abruptly terminating Plaintiff, Defendants failed to accommodate Plaintiff under the ADA by failing to properly engage in the interactive process with her and by unreasonably denying her certain accommodations.

45. Plaintiff therefore avers that her known/perceived disability and/or record of impairment was a determinative/motivating factor in Defendants' decision to terminate her employment.

46. Plaintiff also submits that she was terminated because of her requests for and/or utilization of accommodations, engagement in protected activities, and to prevent her from utilizing accommodations in the future.

47. These actions aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the Fair Labor Standards Act ("FLSA")
**(Retaliation)**

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff was terminated by Defendants for expressing concerns of unpaid overtime.

9

50. Plaintiff's discharge from Defendants for engaging in protected activity under the FLSA constitutes unlawful retaliation under the FLSA. *See supra; see also Lambert v. Ackerley,* 180 F.3d 997, 1003-05 (9th Cir.1999)(*en banc*); *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 44-45 (1st Cir.1999); *EEOC v. Romeo Comty. Sch.,* 976 F.2d 985, 989-90 (6th Cir.1992); *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1011 (11th Cir.1989); *Brock v. Richardson,* 812 F.2d 121, 123-25 (3d Cir.1987); *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 387 (10th Cir.1984); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181 (8th Cir.1975)..

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting retaliation or discrimination in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded punitive/liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate, including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
Timothy S. Seiler, Esq. (316913)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com
tseiler@karpf-law.com

Dated: March 31, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Melissa A. Moore | : | CIVIL ACTION |
| v. | : : : | |
| Bristol Hospice - Blue Bell, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 3/31/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same    Yes ☐
   individual?

5. Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)                                     **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MOORE, MELISSA A. | BRISTOL HOSPICE - BLUE BELL, LLC, ET AL. |

**(b)** County of Residence of First Listed Plaintiff  Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)
Brief description of cause:
Violations of the ADA and the PHRA.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.     DEMAND $      CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE  3/31/2026     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____